*MONCURE, J.
I do not concur in the construction placed by the court below on the marriage contract and memorandum thereto subjoined as part thereof in this case, but am of opinion that the memorandum was intended to reserve to the husband, in the event of his surviving the wife, a life estate in all the property of which the jus disponendi is given to her by the contract. Still I am for affirming the decree. The administrator of the wife is not accountable for any property which may have been disposed of by her in her lifetime; such disposition being as binding on him as on her. The claim of the husband for such property, if any, is against the person who has it in possession. The court was therefore right in dismissing the bill, so far as it claimed relief for any such property; and also in decreeing the payment of the administrator’s costs, he not being in any default.
DANIEL, J.
I think the judge of the Circuit court has given the true construction to the marriage articles entered into between the appellant and his deceased wife, Catharine M. They were carelessly and in-artificially drawn, and the effort to interpret their meaning should be freed as far as possible from the restraint of technical rules.
_ In the body of the instrument, which is signed by the appellant only, he makes, in anticipation, a full surrender and release of all the rights which he might otherwise have acquired in the estate of his intended wife, real and personal, in possession or expectancy, and concedes to her the power to dispose of the same, after marriage, “in as full and ample a manner” as if she had continued a feme sole. Then follows the memorandum, which bears date on the same day with the original instrument, and is signed by both of the parties. It is short, and is in these words: “It is further understood and agreed upon between us, that ^should she die first, I am to retain the property and have the use of it during my natural life, but at my death it is to go to the person or persons which it may be'her will or desire should have it.” I concur with the judge of the Circuit court in thinking that the office of the language employed in the memorandum is fully performed in giving to the husband surviving a life estate in such of the property as remained undisposed of by some act or instrument of the wife operating and taking effect in her lifetime, and which she should dispose of by will or other instrument,to take effect after her death.
The body' of the articles and the memorandum bear date on the 6th February 1834. There is a further memorandum or endorsement of date 20th July 1834, signed by the appellant only, and which is in these words: “It is hereby understood and agreed that the provisions of this contract are not intended to exclude my wife Catharine M. from her right of dower in my estate, should she survive me.” It is argued by the appellant in his petition for an appeal, that all the parts of the instrument must be taken together; that by the last memorandum the dower rights of the wife are fully .secured to her; that it is equally clear that it was the intention' of the parties, as the husband had secured the dower rights of the wife in consideration thereof, that there should be secured to him a life estate in the separate property of the wife: and that while the full benefit of the articles is claimed for the wife against the husband, it is but right that he should have extended to him the benefits of the provisions as against the property of the wife.
It is true that where there is any doubt as to the true import of the language employed by the parties in one part of an instrument, other parts may be looked to and con-suited, and may furnish much aid*in disclosing the true motives and intentions of the parties, and in resolving the doubt. But I do not think that there is any reasonable doubt here as to what the parties meant and intended by the agreement and memorandum of the 6th of February 1834. The wife would have been entitled to dower whether the memorandum of the 20th July had been added or not, there being nothing *147 in the preceding- articles or memorandum from which a purpose on her part to waive or abandon that right can be inferred. With this in view, and looking to the order of time in which the several parts of the instrument were executed (regarding the memorandum of the 20th July in this aspect of the case as part of the instrument), the fair inference is that the first parts of the agreement were made uninfluenced by any agreement on the part of Eidson to enter into such a stipulation as that embraced in the said last mentioned memorandum, and that it was afterwards endorsed out of abundant caution, and to shut out all possible implication that the right of dower was surrendered by anything contained in the marriage articles. In this view I do not see how the said memorandum can reflect any light on the preceding parts of the agreement, or exert any influence on their construction. But there is another, and to my mind a conclusive reason, why the said memorandum should not be looked to as disclosing any motive or consideration to bear on the construction of the instrument favorably for the pretensions of the appellant. It is not stated in the bill or answer when the parties were married, but the fair inference to be drawn from the language of the memorandum is that it was endorsed after the marriage. “The provisions of this contract are not intended to exclude my wife,” &c. If so, the endorsement, however it might bind the husband, could neither be regarded as part of the '^original contract nor as explanatory thereof, so as to affect injuriously the claims and pretensions of the wife. Tabb v. Archer, 3 Hen. and Munf. 399.
Upon the whole, I see no reason to question the correctness of the interpretation of the contract given by the judge of the Circuit court, or of the decree which he has rendered.
It is true that there was a balance appearing due the appellant on the settlement of the administration account for which he obtains a decree. The administrator, however, was in no default, the suit having been brought within five or six months after his qualification. Costs were, therefore, properly given to the appellee as the party substantially prevailing.
I am for affirming the decree.
The other judges concurred in the opinion of Daniel, J.
Decree affirmed.